**[Cite as *State v. Ingram, III*, 2023-Ohio-1998.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-75; 2022-CA-76 |
| | : | |
| v. | : | Trial Court Case No. 22-CR-0411; 22-CR-0434 |
| | : | |
| HERBERT INGRAM, III | : | |
| | : | (Criminal Appeal from Common Pleas Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on June 16, 2023

. . . . . . . . . . .

ANDREW P. PICKERING, Attorney for Appellee

NICOLE K. DIETZ, Attorney for Appellant

. . . . . . . . . . . .

LEWIS, J.

{¶ 1} Defendant-Appellant Herbert Ingram, III, appeals from judgments of conviction of the Clark County Common Pleas Court following his guilty pleas in two separate cases. In these appeals, Ingram challenges the trial court's lack of notification of jail-time credit and alleges that the trial court's imposition of consecutive sentences was

not supported by the record. For the following reasons, we affirm the judgments in part and reverse in part, and remand solely for purposes of a new sentencing hearing in accordance with this opinion.

## I. Statement of Facts and Course of Proceedings

{¶ 2} On May 10, 2022, Ingram was indicted by a Clark County grand jury in Clark C.P. No. 22-CR-411 with: one count of discharge of a firearm on or near a prohibited premises, in violation of R.C. 2923.162(A)(3), a felony of the third degree with a three-year firearm specification in violation of R.C. 2941.145; one count of carrying a concealed weapon, in violation of R.C. 2923.12(A), a felony of the fourth degree; one count of improper handling of a firearm in a motor vehicle, a violation of R.C. 2923.16(B), a felony of the fourth degree; and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree. According to the bill of particulars, the indictment was based on events that occurred on April 23, 2021, namely that Ingram had a loaded firearm concealed in a vehicle in which he was a passenger. As the vehicle approached an intersection, multiple shots were fired at the vehicle from another vehicle, and Ingram returned fire. Several neighbors, including children, were outside in a nearby yard at the time the shots were fired. After leaving the vehicle, Ingram fled on foot along with the driver. During a foot chase, Ingram removed his clothing to avoid detection and was able to break away from officers after they got their hands on him.

{¶ 3} On May 17, 2022, Ingram was indicted by a Clark County grand jury in Clark C.P. No. 22-CR-434 with: one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree with a three-year firearm specification in

violation of R.C. 2941.145 and six-year automatic firearm specification in violation of R.C. 2941.144; one count of unlawful possession of a dangerous ordnance, in violation of R.C. 2923.17(A), a felony of the fifth degree with a six-year automatic firearm specification in violation of R.C. 2941.144; and one count of tampering with evidence, in violation of R.C. 2921.12(A)(1), a felony of the third degree with a three-year firearm specification in violation of R.C. 2941.145 and six-year automatic firearm specification in violation of R.C. 2941.144.  According to the bill of particulars, the charges in this case arose from events that occurred on May 6, 2022, at which time Ingram was alleged to have had possession of a stolen Glock firearm that he modified to make it fire in a fully automatic fashion. When police surrounded the house in which Ingram was located to execute a search warrant to locate the firearm and Glock switch, Ingram attempted to disassemble it and hide it from police.

{¶ 4} Pursuant to a negotiated plea agreement, Ingram entered a guilty plea in Case No. 22-CR-411 to one count of improper handling of a firearm in a motor vehicle, a violation of R.C. 2923.16(B), a felony of the fourth degree; and a guilty plea in Case No. 22-CR-434 to one count of receiving stolen property, in violation of R.C. 2913.51(A), a felony of the fourth degree with an attached six-year automatic firearm specification in violation of R.C. 2941.144.  In exchange for his guilty pleas, the State agreed to dismiss all remaining counts and specifications, but there was no agreement on sentencing.

{¶ 5} Following a presentence investigation report ("PSI"), the trial court sentenced Ingram to a prison term of 18 months in Case No. 22-CR-411, to be served consecutively to a prison term of 18 months in Case No. 22-CR-434, and with an additional mandatory

consecutive prison term of 6 years for the automatic firearm specification.   Ingram timely appealed each of the judgments, which were consolidated on appeal.   He now raises two assignments of error for review, both related to his sentencing.

## II.    Jail-Time Credit

{¶ 6} In his first assignment of error, Ingram contends that the trial court failed to notify him at the time of sentencing of the total number of days of jail-time credit to which he was entitled.   The State concedes that the trial court erred and submits that Ingram is entitled to a resentencing hearing for a determination of jail-time credit.   We agree that the trial court erred in failing to specify Ingram's total number of days of jail-time credit for each of his cases, and we sustain Ingram's first assignment of error.

{¶ 7} "Where, for whatever reason, a defendant remains in jail prior to his trial, he must be given credit on the sentence ultimately imposed for all periods of actual confinement on that charge."   *State v. Russell*, 2d Dist. Montgomery No. 26503, 2015-Ohio-3373, ¶ 37, citing *State v. Coyle*, 2d Dist. Montgomery No. 23450, 2010-Ohio-2130, ¶ 5.   R.C. 2929.19(B)(2)(g)(i) specifically provides that at the sentencing hearing, the trial court must "[d]etermine, notify the offender of, and include in the sentencing entry the total number of days, including the sentencing date but excluding conveyance time, that the offender has been confined for any reason arising out of the offense for which the offender is being sentenced[.]"   Ohio Adm.Code 5120-2-04(B) likewise provides that the trial court is required to determine "the amount of time the offender served locally before being sentenced" and "must make a factual determination of the number of days credit to which the offender is entitled by law and include this information within the sentencing

entry[.]"  However, it is the duty of the Ohio Department of Rehabilitation and Correction (ODRC), not the trial court, to reduce the offender's sentence "by the number of days the offender was confined as a result of the offense, between the date of the sentencing entry and the date committed to the [ODRC] * * *."  Ohio Adm.Code 5120-2-04(A).  "[T]he trial court's obligation in calculating jail-time credit is limited to calculating the total number of days the defendant was confined prior to sentencing.  After sentencing, * * * it is the obligation of the Ohio Department of Rehabilitation and Correction to credit the defendant with the number of days the defendant was confined between the date of his sentencing and the date of the defendant's conveyance to prison."  *State v. Dearmond*, 2d Dist. Clark No. 2022-CA-17, 2022-Ohio-3252, ¶ 13.

{¶ 8} Considering the aforementioned requirements, the trial court was obligated to calculate Ingram's jail-time credit at the time of sentencing, notify Ingram of the number of days of jail-time credit that he was to receive in each case, and memorialize that information in each of the judgment entries.   The only discussion of jail-time credit at the time of Ingram's sentencing was at the very end of the colloquy wherein the trial court stated, "You will receive credit for time spent in the Clark County Jail towards your sentence.   And that will be all."   Sentencing Tr. 9.   At that point, the sentencing hearing concluded with no opportunity to discuss Ingram's jail-time credit.   Furthermore, only the judgment entry in Case No. 22-CR-411 makes any mention of jail-time credit, which states that Ingram is to serve 18 months in prison "with jail time credit from May 7, 2022 until conveyance to [ODRC]."   However, the trial court may not include as jail-time credit the number of days the defendant was confined between the date of his sentencing and the

date of the defendant's conveyance to prison.   *Dearmond* at ¶ 13.

{¶ 9} The trial court erred in failing to advise Ingram of the specific number of days of jail-time credit to which he was entitled and in failing to include the number of days of jail-time credit in each of the judgment entries.   This is particularly troubling given that Ingram was being sentenced on two separate cases, and he did not have any opportunity to respond after the trial court's limited jail-time credit statement.   Under these circumstances, we agree with the parties that the case should be remanded to the trial court to correctly advise Ingram of the number of days of jail-time credit he is to receive in each of his separate cases and to include those findings in the judgment entries. Ingram's first assignment of error is sustained.

### III.   Consecutive Sentences

{¶ 10} In his second assignment of error, Ingram claims that the trial court's consecutive sentence findings were not supported by the record.   We agree.

{¶ 11} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G).   *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7.   Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain enumerated statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law.   *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 12} "Under Ohio law, absent an order requiring sentences to be served

consecutively, terms of incarceration are to be served concurrently." *State v. Sergent*, 148 Ohio St.3d 94, 2016-Ohio-2696, 69 N.E.3d 627, ¶ 16, citing R.C. 2929.41(A). "But there are certain circumstances that require the imposition of consecutive sentences. For example, R.C. 2929.14(C)(1)(a), which requires that any mandatory prison term for having a firearm in the commission of a felony shall be served consecutively to any mandatory sentence imposed for the underlying felony. Otherwise, trial judges have discretion to order that multiple sentences be served consecutively pursuant to R.C. 2929.14(C)(4)[.]" *Id.* A trial court may impose consecutive sentences under R.C. 2929.14(C)(4) if it finds that: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one or more of the following three findings are satisfied:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 13} "[A] trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. "[A] word-for-word recitation of the language of the statute is not required," though, "and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Id.* at ¶ 29.

{¶ 14} "The first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made– i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)." *State v. Gwynne*, Ohio Slip Opinion No. 2022-Ohio-4607, __ N.E.3d __, ¶ 25. "If the trial court fails to make these findings, and that issue is properly raised on appeal, then the appellate court must hold that the order of consecutive sentences is contrary to law and either modify the sentence or vacate it and remand the case for resentencing." *Id.* On the other hand, if the R.C. 2929.14(C)(4) consecutive-sentence findings have been made, this Court must then determine whether the record clearly and convincingly supports those findings. *Gwynne*

at ¶ 26. If the consecutive-sentence finding "is found not to be supported by the record under the clear-and-convincing standard provided by R.C. 2953.08(G)(2), then the trial court's order of consecutive sentences must be either modified or vacated[.]" *Id.*

{¶ 15} "An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds – in other words, has a firm conviction or belief – that the evidence in the record does not support the consecutive-sentence findings that the trial court made." *Id.* at ¶ 27. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 16} "When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Gwynne* at ¶ 28. For purposes of this review, the record includes any of the following that may apply: "written presentence, psychiatric, or other investigative reports submitted to the trial court prior to sentencing; the trial court record in the case in which the sentence was imposed; any oral or written statements made to or by the court at sentencing; and any written findings the court was required to make in connection with a grant of judicial release." *Id.* at ¶ 28, fn. 6, citing R.C. 2953.08(F)(1)-(4). This Court must "focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* at ¶ 29. This Court "may not, for example, presume that because the record contains some evidence relevant to and not inconsistent with the consecutive-

sentence findings, that this evidence is enough to fully support the findings." *Id.* "R.C. 2953.08(G)(2) explicitly rejects this type of deference to a trial court's consecutive-sentence findings." *Id.* Instead, this Court is "authorized to substitute its judgment for the trial court's judgment if [we have] a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results." *Id.*

{¶ 17} Because these cases involved guilty pleas, the facts are limited. However, in considering the indictments, the bills of particulars, statements of the parties, and the PSI, we clearly and convincingly find that the record does not support the trial court's findings for consecutive sentences under R.C. 2929.14(C)(4)(b). The events in Case No. 22-CR-411 occurred on April 23, 2021. At that time, Ingram had possession of a loaded firearm concealed on his person while a passenger inside a vehicle. While near an intersection, multiple shots were fired at the car in which Ingram was seated. As a result, Ingram got out of the car and returned fire. After shooting, Ingram fled the scene on foot, although at some point he returned to the car to retrieve a bag before fleeing again. While attempting to evade the police who were chasing him, Ingram disposed of some of his clothing. When eventually grabbed by police, he was able to break free and was not recaptured. The shooting was captured on video, and officers identified Ingram as the shooter. However, because officers were unable to arrest Ingram at that time, they issued a warrant for his arrest. During that incident, two houses and a vehicle were struck by gunfire. There were also several bystanders outside, including children, who

were caught in the crossfire but were apparently uninjured. For this case, Ingram was convicted of one count of improper handling of a firearm in a motor vehicle.

{¶ 18} In Case No. 22-CR-434, Ingram was arrested on May 6, 2022, following the execution of a search warrant in an ongoing homicide investigation. Ingram was located inside the home that was the subject of the warrant. Based on information related to the homicide investigation, officers were searching for a handgun that was believed to have a "Glock switch," an item that would convert the semi-automatic firearm into a fully automatic firearm. A disassembled Glock firearm was recovered from inside the home. However, the Glock switch had been removed, and Ingram had secretly passed it to his mother; it was later recovered from her person. The firearm was found to have been reported as a stolen firearm approximately two weeks earlier. For this case, Ingram was convicted of one count of receiving stolen property with a six-year automatic firearm specification.

{¶ 19} By operation of statute, the six-year automatic firearm specification required the trial court to impose a mandatory six-year prison term consecutively to and prior to any other prison term previously or subsequently imposed, including any prison term imposed for the underlying felony. R.C. 2929.14(B)(1)(a)(i) and 2929.14(C)(1)(a). Accordingly, the trial court was obligated to order, as it did, that Ingram serve his sentence for the six-year firearm specification consecutively to his sentences for receiving stolen property and improper handling of a firearm in a motor vehicle.

{¶ 20} Although those sentences were required by statute to be served consecutively to the mandatory six-year prison sentence for the automatic firearm

specification, there was no statutory requirement for them to be served consecutively to one another. Consequently, the trial court had discretion to impose consecutive sentences for receiving stolen property and improper handling of a firearm in a motor vehicle, but it was required to make consecutive sentence findings pursuant to R.C. 2929.14(C) in order to do so.

{¶ 21} At the time of sentencing, the trial court stated the following:

I do find that consecutive sentences are necessary to protect the public from future crime and to punish the Defendant. They are not disproportionate to the seriousness of his conduct and to the danger he poses to the public *and that these offenses were committed as part of a course of conduct* and the harm caused was so great that no single prison term adequately reflects the seriousness of his conduct.

(Emphasis added.) Sentencing Tr. 8. The judgment entry in Case No. 22-CR-434 contained similar language.

{¶ 22} Although not stated verbatim, it is clear that the trial court was making a finding that R.C. 2929.14(C)(4)(b) applied. Compare with R.C. 2929.14(C)(4)(b) ("At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct."). According to Ingram, however, because the offenses in this case were not committed as part of a course of conduct, rather, they were separate offenses that

occurred approximately one year apart, the record did not support the trial court's specific consecutive sentence findings.

{¶ 23} "Typically, a finding of the course of conduct factor is reserved for multiple instances or related acts." *State v. Robinson*, 2019-Ohio-2155, 137 N.E.3d 501, ¶ 35 (4th Dist.). "In order to find that two offenses were part of a single course of conduct, a trial court 'must * * * discern some connection, common scheme, or some pattern or psychological thread that ties [the offenses] together.' " (Brackets sic.) (Citation omitted.) *State v. Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837, ¶ 33, quoting *State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, syllabus. "A course of conduct may be established by factual links such as time, location, weapon, cause of death, or similar motivation." (Citations omitted.) *Id.*

{¶ 24} As part of the discretionary consecutive sentencing findings, the trial court explicitly found that "these offenses were committed as part of a course of conduct." Sentencing Tr. 8. But there was no discernable connection, common scheme, pattern, or psychological thread that tied the two offenses together. The offenses occurred approximately a year apart, in separate locations, and involved different firearms. Because the record failed to establish that the offenses in Case Nos. 22-CR-411 and 22-CR-434 were part of a course of conduct as the trial court found, we clearly and convincingly find the record did not support the sentencing court's findings under R.C. 2929.14(C)(4)(b). Furthermore, an appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made, meaning that "a reviewing court cannot determine for itself which of the three permissible findings within

R.C. 2929.14(C)(4)(a)-(c) might apply to satisfy the third required finding for imposing consecutive sentences, as the trial court is permitted to do." *Gwynne*, Ohio Slip Opinion 2022-Ohio-4607, __ N.E.3d.__, at ¶ 21. Because the trial court only found that consecutive sentences were appropriate under R.C. 2929.14(C)(4)(b), we agree with Ingram that we cannot consider whether the record supported consecutive sentences under R.C. 2929.14(C)(4)(a) or (c). Accordingly, Ingram's second assignment of error is sustained.

## IV. Conclusion

{¶ 25} Having sustained both of Ingram's assignments of error, we reverse the judgments to the extent they impose consecutive sentences under R.C. 2929.14(C)(4)(b) and remand for a new sentencing hearing at which the trial court shall correctly advise Ingram of the number of days of jail-time credit he is to receive in each of his cases and include those findings in the judgment entries. In all other respects, the judgments of the trial court will be affirmed.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.