[Cite as *State v. Six*, 2023-Ohio-2892.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-1 |
| | : | |
| v. | : | Trial Court Case No. 21-CR-0379 |
| | : | |
| DIANE SIX | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on August 18, 2023

. . . . . . . . . . .

ANDREW P. PICKERING, Attorney for Appellee

MICHAEL R. PENTECOST, Attorney for Appellant

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Defendant-Appellant, Diane Six, appeals from her convictions on one count of possession of a fentanyl-related compound, one count of aggravated trafficking in drugs, and one count of possession of drugs, following her guilty pleas. Six's appointed appellate counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), asserting the absence of non-frivolous issues for review.

After examining the record, counsel could not find any prejudicial errors and has asked us to independently review the record. Counsel did raise one potential error related to sentencing.

{¶ 2} Six was notified of the filing of the *Anders* brief and was given the opportunity to file a pro se brief by June 12, 2023, to raise issues for our review. However, she did not file a brief. The State has not responded to the *Anders* brief. As a result, this matter is ready to be resolved.

{¶ 3} As required by *Anders*, we independently reviewed the record and found no issues with arguable merit for appeal. Therefore, counsel's *Anders* brief will be accepted, and Six's convictions will be affirmed.

## I. Facts and Course of Proceedings

{¶ 4} On June 22, 2021, a ten-count indictment was filed in the Clark County Common Pleas Court, charging Six with the following crimes: count one, trafficking in a fentanyl-related compound, a first-degree felony; count two, possession of a fentanyl-related compound, a first-degree felony; count three, aggravated trafficking in drugs (methamphetamine), a second-degree felony; count four, aggravated possession of drugs (methamphetamine), a second-degree felony; count five, aggravated trafficking in drugs (oxycodone), a fourth-degree felony; count six, aggravated possession of drugs (oxycodone), a fifth-degree felony; count seven, trafficking in cocaine, a fourth-degree felony; count eight, possession of cocaine, a fourth-degree felony; count nine, trafficking in drugs (alprazolam), a fifth-degree felony; and count ten, trafficking in drugs (tramadol),

a fifth-degree felony. A forfeiture specification was included for all counts, seeking forfeiture of $200 in cash and a 2010 Mercury Milan automobile registered to Six. The offenses were alleged to have occurred on March 9, 2021.

{¶ 5} A warrant for Six's arrest was issued the day the indictment was filed; Six's last known address was "at large." Six was arrested on October 7, 2022, and appeared at arraignment that day, where the court set bond at $150,000 cash or surety. The court also appointed counsel, who then filed a request for a jury trial, asserted Six's speedy trial rights, demanded discovery, and demanded a bill of particulars. Subsequently, the court set a pretrial for November 3, 2022, and a jury trial for December 14, 2022.

{¶ 6} The trial did not go forward as scheduled. On December 15, 2022, Six appeared in court with her attorney. At that time, the State informed the court that Six would plead guilty to counts one, three, and six. Transcript of Proceedings (Plea) ("Plea Tr."), 3. In exchange, the State agreed to dismiss the remaining counts and to have a presentence investigation report ("PSI") completed. *Id.* at 4. The State related the facts to the court, which were that on March 9, 2021, Officer Freeman was contacted by the Intelligence Unit concerning a traffic stop the unit wanted Freeman to make. The vehicle was described (a 2010 Mercury Milan), and Det. Burke advised that the driver was Six, who had numerous outstanding warrants. *Id.*

{¶ 7} After confirming that Six was the driver, the police made a traffic stop and requested a canine unit. Det. Weaver and his partner walked around the outside of the car, and Weaver's dog indicated the presence of drugs on the driver's side. *Id.* When the car was searched, the police found a cup containing several plastic bags and smaller

bags within those bags that were thought to be narcotics. *Id.* The substances were then sent to the Bureau of Criminal Investigation for analysis. *Id.*

{¶ 8} Concerning count one, the substance contained 35.9 grams of fentanyl, and with respect to count three, the substance contained 42.96 grams of methamphetamine. Finally, regarding count six, four pills, being oxycodone, were discovered. *Id.* at 5.

{¶ 9} After hearing that Six wished to plead guilty based on the outlined terms, the trial court conducted a Crim.R. 11(C) colloquy. Plea Tr. at 6-17. During the hearing, the court and the parties realized that the body of count one incorrectly referenced cocaine, whereas the heading of that count referred to trafficking in a fentanyl-related compound. *Id.* at 11. As a result, the State moved to amend the plea agreement to an admission to count two (possession of a fentanyl-related compound, which, like count one, was a first-degree felony), and all penalties would remain the same. *Id.* at 13.

{¶ 10} The plea agreement was changed to reflect the fact that Six would be pleading guilty to counts two, three, and six, with the State dismissing the rest of the charges. *Id.* The court explained the change to Six. *Id.* at 14-15. After Six pled guilty, the court found she had knowingly, voluntarily, and intelligently waived her rights and had entered guilty pleas to counts two, three, and six. *Id.* at 15. The court then found Six guilty, ordered a PSI, and scheduled disposition for January 10, 2023. *Id.* at 16. Six also agreed during the hearing to forfeit the $200 and the 2010 Mercury Milan motor vehicle. *Id.*

{¶ 11} At sentencing, the trial court imposed indefinite prison sentences of 11 to 16.5 years on the fentanyl-compound possession charge, eight to 12 years for aggravated

trafficking in methamphetamine, and 12 months in prison for possession of oxycodone. The prison terms were the maximum allowed for the particular convictions, with the first two terms imposed consecutively and the third term imposed concurrently to the consecutive sentences. The total aggregate sentence, therefore, was an indefinite prison term of 19 to 24.5 years. Transcript of Proceedings (Disposition) ("Disposition Tr."), 9-11. The court filed a judgment entry of conviction and warrant for removal on January 11, 2023, and Six filed a notice of appeal on January 18, 2023. The trial court then filed an amended judgment entry on January 23, 2023.

{¶ 12} On January 25, 2023, Six filed a motion in our court, seeking to amend her notice of appeal to include the January 23, 2023 notice of appeal. We denied the motion because the January 11, 2023 judgment was a final judgment. *See* Order Overruling Motion to Amend (Feb. 9, 2023), p. 1. We noted that if the amended judgment entry were a nunc pro tunc entry, Six could elect to supplement the record with the amended judgment. *Id*. at p. 2. No motion to supplement was filed however. On April 12, 2023, we ordered the appellate record to be supplemented with the PSI, and that has been done.

## II. Discussion

{¶ 13} Pursuant to *Anders*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, we must independently review the record to decide if the appeal at issue is wholly frivolous. *Id*. at 744. "*Anders* equates a frivolous appeal with one that presents issues lacking in arguable merit. An issue does not lack arguable merit merely because the prosecution

can be expected to present a strong argument in reply, or because it is uncertain whether a defendant will ultimately prevail on that issue on appeal." *State v. Marbury*, 2d Dist. Montgomery No. 19226, 2003-Ohio-3242, ¶ 8. Rather, "[a]n issue lacks arguable merit if, on the facts and law involved, no responsible contention can be made that it offers a basis for reversal." *State v. Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, ¶ 4.

**{¶ 14}** If we decide an appeal is frivolous, we may grant counsel's request to withdraw and dismiss the appeal without violating any constitutional requirements, or we "can proceed to a decision on the merits if state law requires it." *State v. McDaniel*, 2d Dist. Champaign No. 2010-CA-13, 2011-Ohio-2186, ¶ 5, citing *Anders* at 744. However, if we find that any issues "involve legal points that are arguable on their merits, and therefore are not wholly frivolous, per *Anders* we must appoint other counsel to argue the appeal." *Pullen* at ¶ 2. With these points in mind, we will proceed with our review.

### 1. Failure to Consider Purposes and Principles of Sentencing

**{¶ 15}** Six's counsel has suggested one potential assignment of error but had concluded it has no merit. This assignment of error is as follows:

The Trial Court Failed to Properly Consider the Principles and Principals [sic] of Sentencing Pursuant to R.C. 2929.11 and the Seriousness and Recidivism Factors Pursuant to R.C. 2929.12 When It Imposed Maximum Consecutive Sentences on Counts Two and Three.

**{¶ 16}** Under this potential assignment of error, Six's counsel notes that the trial

court did not refer at the sentencing hearing to the principles and purposes of sentencing but did include a reference to them in its second amended judgment entry filed on February 17, 2023. Appellant's Brief, p. 3. However, that judgment (like the first amended judgment) is not properly before us; only the initial judgment entry is the subject of this appeal. Nonetheless, the initial judgment entry did indicate that the court had considered the purposes and principles of sentencing under R.C. 2929.11 and the seriousness and recidivism factors under R.C. 2929.12. *See* Judgment Entry of Conviction/Warrant for Removal ("Judgment") (Jan. 11, 2023), p. 2. Thus, there is no need to consult another judgment.

{¶ 17} R.C. 2929.11(A) outlines the "the overriding purposes of felony sentencing," which are to "protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.12 details factors relating to the seriousness of an offender's conduct, the likelihood of recidivism, service in the Armed Forces, and the purposes and principles of sentencing.

{¶ 18} We have previously stressed that even if a trial court does not explicitly mention the sentencing factors in R.C. 2929.11 and R.C. 2929.12. we will presume on a silent record that the court considered them. *State v. Strawsburg*, 2d Dist. Clark No. 2018-CA-14, 2018-Ohio-4764, ¶ 6, citing *State v. Atchison*, 2d Dist. Clark No. 2017-CA-76, 2018-Ohio-2419, ¶ 23. *See also State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 20 (remarking that "neither R.C. 2929.11 nor 2929.12 requires

a trial court to make any specific factual findings on the record"). We further noted in *Strawsburg* that the trial court's judgment entry did mention these factors; as a result, we found that no non-frivolous issues existed. *Strawsburg* at ¶ 6. The same principle applies here, as the trial court specifically included appropriate language in its judgment entry. Consequently, any argument on this point would be wholly frivolous. That does not end our review, however.

### 2. General Review of Felony Sentencing as Applied Here

{¶ 19} As part of our independent review, we have considered whether the trial court's sentence complied with sentencing standards. In reviewing felony sentences "an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, interpreting R.C. 2953.08(G)(2). "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. Thus, in evaluating sentences, a reviewing court considers both the findings under statutes enumerated in R.C. 2953.08(G) and whether a sentence is contrary to law, as that term has been defined. We will first consider whether the

sentence was contrary to law.

### a. Whether the Sentence Is Contrary to Law

{¶ 20} In deciding if a sentence is "contrary to law," the pertinent law is R.C. 2929.13(A), which says (with certain exceptions that do not apply) that "unless a specific sanction is required to be imposed or is precluded from being imposed pursuant to law, a court that imposes a sentence upon an offender for a felony may impose any sanction or combination of sanctions on the offender that are provided in sections 2929.14 to 2929.18 of the Revised Code."  As we have said many times, "[t]he trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences."  *State v. King*, 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). *Accord State v. Hisel*, 2d Dist. Montgomery No. 29322, 2023-Ohio-859, ¶ 31.

{¶ 21} Because Six's first and second-degree felony offenses were committed after March 22, 2019, they were classified as "qualifying offenses" under R.C. 2929.144(A).   In this situation, R.C. 2929.144(B) provides that:

> The court imposing a prison term on an offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree shall determine the maximum prison term that is part of the sentence in accordance with the following:
>
> (1) If the offender is being sentenced for one felony and the felony is a qualifying felony of the first or second degree, the maximum prison term

shall be equal to the minimum term imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code plus fifty per cent of that term.

(2) If the offender is being sentenced for more than one felony, if one or more of the felonies is a qualifying felony of the first or second degree, and if the court orders that some or all of the prison terms imposed are to be served consecutively, the court shall add all of the minimum terms imposed on the offender under division (A)(1)(a) or (2)(a) of section 2929.14 of the Revised Code for a qualifying felony of the first or second degree that are to be served consecutively and all of the definite terms of the felonies that are not qualifying felonies of the first or second degree that are to be served consecutively, and the maximum term shall be equal to the total of those terms so added by the court plus fifty per cent of the longest minimum term or definite term for the most serious felony being sentenced.

{¶ 22} Under R.C. 2929.14(A)(1)(a), the possible prison sentence for the first-degree felony was "an indefinite prison term with a stated minimum term selected by the court of three, four, five, six, seven, eight, nine, ten, or eleven years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code * * *." Similarly, under R.C. 2929.14(A)(2)(a), the possible sentence for Six's second-degree felony was "an indefinite prison term with a stated minimum term selected by the court of two, three, four, five, six, seven, or eight years and a maximum term that is determined pursuant to section 2929.144 of the Revised Code * * *." Finally, under R.C. 2929.14(A)(5), the

prison term for Six's fifth-degree felony was "a definite term of six, seven, eight, nine, ten, eleven, or twelve months."

{¶ 23} Consistent with these statutes, the trial court sentenced Six to a "minimum" of 11 years and a "maximum" of 16.5 years for the first-degree felony; a "minimum" of eight years and a "maximum" of 12 years for the second-degree felony (to be served consecutively to the first-degree felony); and 12 months (the maximum term) for the fifth-degree felony (to be served concurrently to the other offenses). Again, consistent with the statutes, the court sentenced Six to an indefinite sentence of a minimum of 19 years (11 years plus eight years) and a maximum of 19 years plus 5.5 (50% of the longest "minimum" term) or 24.5 years. Six's sentences, while being the highest sentences for each particular conviction, were within the statutory ranges, and the trial court correctly calculated them. Consequently, arguing that the sentences were contrary to law would be wholly frivolous.

### b. Findings Under Enumerated Statutes

{¶ 24} As noted, the second issue for sentencing review is whether the court's findings comport with enumerated statutes. *Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 1. Concerning "enumerated" statutes, R.C. 2953.08(G)(2)(a) requires courts to consider whether the record fails to "support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant."

{¶ 25} R.C. 2929.20(I) pertains to hearings on judicial release and is not relevant. R.C. 2929.13(B) is also irrelevant because it applies to deciding whether to impose community control or prison for fourth- and fifth-degree felonies. Further, while R.C. 2929.13(D) does apply to first and second-degree felonies (as well as other offenses for which a presumption of prison exists), it discusses standards for imposing community control sanctions instead of prison and is not pertinent here.

{¶ 26} R.C. 2929.14(B)(2)(e) states that "[w]hen imposing a sentence pursuant to division (B)(2)(a) or (b) of this section, the court shall state its findings explaining the imposed sentence." However, R.C. 2929.14(B)(2)(a) and (b) are irrelevant, because they refer to additional definite prison sentences that courts "may" impose on repeat violent offenders if certain criteria apply (subsection (a)) or "shall impose" on repeat violent offenders if certain conditions are met (subsection (b)).

{¶ 27} The only matter referenced in R.C. 2953.08(G)(2)(a) that might be relevant here is R.C. 2929.14(C)(4), because the trial court imposed consecutive sentences for two of the sentences. Regarding the trial court's specific findings, R.C. 2929.14(C)(4) states, in pertinent part, that:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public,

and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.[1]

{¶ 28} "The first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made – i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)." *State v. Gwynne*, Ohio Slip Opinion No. 2022-Ohio-4607, __ N.E.3d __, ¶ 25. The trial court made the above findings as to R.C. 2929.14(C)(4)(a) and (b) during the sentencing hearing and in its original judgment of conviction. *See* Disposition Tr. at 9-10 and Judgment, p. 2. Therefore, any argument to the contrary would be wholly frivolous.

{¶ 29} "If the appellate court determines that the R.C. 2929.14(C)(4) consecutive-sentence findings have been made, the appellate court may then determine whether the record clearly and convincingly supports those findings." *Gwynne* at ¶ 26. "[I]f even

---

[1] R.C. 2929.14 was amended, effective April 4, 2023, but the relevant provisions in subsection (C) have not changed from the version in effect when Six was sentenced.

one of the consecutive-sentence findings is found not to be supported by the record under the clear-and-convincing standard provided by R.C. 2953.08(G)(2), then the trial court's order of consecutive sentences must be either modified or vacated by the appellate court." *Id.*

**{¶ 30}** "An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds – in other words, has a firm conviction or belief – that the evidence in the record does not support the consecutive-sentence findings that the trial court made. To reiterate, R.C. 2953.08(G)(2)'s clear-and-convincing standard does not permit – much less require or expect – an appellate court to modify or vacate an order of consecutive sentences only when it is unequivocally certain that the record does not support the findings. It requires that the appellate court vacate or modify the order if, upon review of the record, the court is left with a firm belief or conviction that the findings are not supported by the evidence." *Id.* at ¶ 27.

**{¶ 31}** "When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made. If after reviewing the applicable aspects of the record and what, if any, evidence it contains, the appellate court finds that there is no evidence in the record to support the consecutive sentence findings, then the appellate court must reverse the order of consecutive sentences." (Footnote omitted.) *Id.* at ¶ 28.

**{¶ 32}** "The second requirement is that whatever evidentiary basis there is, that it be adequate to fully support the trial court's consecutive-sentence findings." *Id.* at ¶ 29.

Again, "a de novo standard of review applies to whether the evidence in the record supports the findings that were made. Under this standard, the appellate court is, in fact, authorized to substitute its judgment for the trial court's judgment if the appellate court has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results." *Id.*

{¶ 33} In a recent case, we reversed the trial court's imposition of consecutive sentences because we "clearly and convincingly" found that "that the record does not support the trial court's findings for consecutive sentences under R.C. 2929.14(C)(4)(b)." *State v. Ingram III*, 2d Dist. Clark No. 2022-CA-75, 2023-Ohio-1998, ¶ 17. In *Ingram*, the defendant had been charged with several offenses in two separate cases in the same court, but he ultimately pled to only one charge in each case. In exchange, the State agreed to dismiss the remaining charges and specifications. *Id.* at ¶ 2-4. The trial court found, concerning both cases, that " 'these offenses were committed as part of a course of conduct and the harm caused was so great that no single prison term adequately reflects the seriousness of [the defendant's] conduct.' " *Id.* at ¶ 21, quoting Sentencing Transcript, 8. We interpreted this as a finding under R.C. 2929.14(C)(4)(b). *Id.* at ¶ 22.

{¶ 34} In deciding if a "course of conduct" existed between the offenses, we noted that " '[t]ypically, a finding of the course of conduct factor is reserved for multiple instances or related acts.' " *Id.* at ¶ 23, quoting *State v. Robinson*, 2019-Ohio-2155, 137 N.E.3d 501, ¶ 35 (4th Dist.). We further remarked that "[i]n order to find that two offenses were

part of a single course of conduct, a trial court 'must * * * discern some connection, common scheme, or some pattern or psychological thread that ties [the offenses] together.' " *Id*., quoting *State v. Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837, ¶ 33. (Other citation omitted.) We found "no discernable connection, common scheme, pattern, or psychological thread that tied the two offenses together," because "[t]he offenses occurred approximately a year apart, in separate locations, and involved different firearms." *Id*. at ¶ 12.

{¶ 35} In the case before us, the trial court's stated reasons for finding a course of conduct (and for imposing consecutive sentences) were as follows:

[A]t least two of these offenses were committed as part of a course of conduct being her own admission that she was trafficking in both Alabama and Indiana * * * and that the harm caused by one of more of the multiple offenses was so great or unusual that no single prison term adequately reflects the seriousness of her conduct. It also appears that she did have charges pending in Indiana, charges that arose on January 1st, 2021, and that while those charges were pending, while she was awaiting trial she committed the offenses in this case. There was a warrant issued for her arrest on June 23, 2021 in the Indiana case.

And, for the record, I did listen to that jail call and specifically heard the Defendant say something along the lines of she was trafficking across state lines in three states while law enforcement wasn't paying attention." So there's no question that this is, the offenses committed here were part

of a course of criminal conduct.

Disposition Tr. at 9-10.

{¶ 36} While the record is somewhat sparse due to the guilty plea, there is no question that the court's observations were supported by the record, and any argument otherwise would be wholly frivolous. According to the PSI, the offenses listed in the indictment occurred on March 9, 2021, when Six's automobile was stopped and drugs were found in her car. PSI, p. 2-3. The charge in count one for which Six originally agreed to plead guilty was trafficking in a fentanyl-related compound. As noted, due to an error in the body of the charge, the parties agreed that Six would plead guilty instead to possession of a fentanyl-related compound, which was also a first-degree felony and carried the same penalties. Absent that error, Six would have pled to two trafficking charges; she also discussed her drug trafficking while in jail awaiting trial on the current trafficking offenses. These facts clearly indicated a course of conduct, even without the additional information about the offenses for which Six had been indicted in Indiana.

{¶ 37} In this regard, the PSI indicated that on January 21, 2021, Six was charged in Jay County, Indiana, with seven drug-related offenses, several of which included trafficking offenses. These included: "Dealing in Methamphetamine," a second-degree felony; "Dealing in Narcotic Drug Manufacture/Deliver," a fourth-degree felony; two counts of "Dealing in a Schedule IV Controlled Substance," third-degree felonies; "Unlawful Sale of Legend Drugs," a sixth-degree felony; and "Dealing in Marijuana." PSI at p. 4. The dates of these offenses were not listed, but presumably they occurred at some time before the January 2021 indictment was filed.

{¶ 38} Cases using the term "course of conduct" generally do so in the context of the specific convictions for which the defendant is being sentenced. For example, in *Ingram*, the defendant was being sentenced in two cases in the same court, and while the court found that the defendant's actions in these cases had constituted a "course of conduct," we disagreed. As noted, we concluded there was "no discernable connection, common scheme, pattern, or psychological thread that tied the two offenses together," because they had "occurred approximately a year apart, in separate locations, and involved different firearms." *Ingram*, 2d Dist. Clark No. 2022-CA-75, 2023-Ohio-1998, at ¶ 24. As a result, we "clearly and convincingly" found that "the record did not support the sentencing court's findings under R.C. 2929.14(C)(4)(b)." *Id.*

{¶ 39} Similarly, we discussed "course of conduct" in the context of the offenses at issue in *Lambert*, 2d Dist. Champaign No. 2018-CA-28, 2019-Ohio-2837. There, we agreed with the trial court that the defendant had engaged in a "course of conduct" for purposes of consecutive sentences when "one victim died and another was severely injured as a consequence of [defendant's] actions in disregarding traffic regulations while operating a vehicle without a valid license and when under the influence of alcohol." *Id.* at ¶ 34. *See also State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, ¶ 88 (2d Dist.) (where the record indicated that defendant's "offenses all occurred on the same day, revolved around the same drive-by shooting, and involved the same weapon," the appellate court could not "clearly and convincingly find that the record" failed to "support the trial court's finding that at least two of the multiple offenses were committed as a part of a course of conduct"). In discussing consecutive sentences in *Ramey*, we noted that

the defendant had been involved in similar altercations in the past. *Id.* at ¶ 86.

{¶ 40} In addition, the Supreme Court of Ohio concluded that for purposes of the death penalty specifications in R.C. 2929.05(A)(5), a "course of conduct" existed concerning two murders in August 1992 and two other murders, one of which occurred in September 1993 and the other of which took place in July 1995. *See State v. Sapp*, 105 Ohio St.3d 104, 2004-Ohio-7008, 822 N.E.2d 1239, ¶ 2, 23-24, and 52-61. The court acknowledged that "the amount of time between the offenses is a relevant factor" but also said this was not necessarily determinative because "all the circumstances must be taken into account." *Id.* at ¶ 54-56. The court then found a course of conduct based on common features of the killings and the defendant's statements about his motives. *Id.* at ¶ 59-80. Of course, in *Sapp,* the defendant was being tried for all these crimes together, and the court was simply considering whether they were connected for purposes of the death penalty specification.

{¶ 41} An argument might be made that the trial court erred in considering the Indiana crimes as part of a "course of conduct," since they were not offenses involved in the current case, nor were they temporally close. However, the argument would be wholly frivolous. The Indiana offenses were quite similar to the crimes involved here, and Six herself connected them with her own statements. She also admitted that she had engaged in a pattern of drug trafficking. Furthermore, as noted, Six would have pled guilty to two trafficking offenses in the current case but for an error in the indictment, and she did plead guilty to trafficking and possession of drugs. As a result, any claim based on the court's consecutive sentence findings under R.C. 2929.14(C)(4)(b) would be

wholly frivolous.

{¶ 42} The trial court also properly considered the Indiana charges in finding under R.C. 2929.14(C)(4)(a) that Six had committed the current offenses while "awaiting trial" in Indiana. Disposition Tr. at 10. There was no dispute about this.

{¶ 43} In view of the preceding discussion, an argument that the record fails to support the trial court's imposition of consecutive sentences would be wholly frivolous. Accordingly, "no responsible contention can be made" that any trial court error in sentencing "offers a basis for reversal." *Pullen*, 2d Dist. Montgomery No. 19232, 2002-Ohio-6788, at ¶ 4.

{¶ 44} As a final matter, the only other item in the record for independent review is Six's guilty plea. "Because a no-contest or guilty plea involves a waiver of constitutional rights, a defendant's decision to enter a plea must be knowing, intelligent, and voluntary." *State v. Dangler*, 162 Ohio St.3d 1, 2020-Ohio-2765, 164 N.E.3d 286, ¶ 10, citing *Parke v. Raley*, 506 U.S. 20, 28-29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992). (Other citations omitted.) "If the plea was not made knowingly, intelligently, and voluntarily, enforcement of that plea is unconstitutional." *Id.* "To ensure that pleas conform to these high standards, the trial judge must engage the defendant in a colloquy before accepting his or her plea." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26. Trial courts, therefore, are bound to comply with Crim.R. 11(C). *Id.* at ¶ 27.

{¶ 45} Having reviewed the plea transcript, we find that the trial court fully complied with Crim. R. 11(C)(2)(c) by personally advising Six of her constitutional rights, including that her guilty pleas waived the right to a jury trial and that she was entitled to confront

witnesses against her, to have compulsory process for obtaining witnesses in her favor, and to require that the State prove her guilt beyond a reasonable doubt at a trial at which she could not be compelled to testify against herself. Plea Tr. at 10-11 and 16. In addition, the court determined that Six was making her plea voluntarily, with understanding of the nature of the charges against her and the maximum penalties involved, and with the understanding that she would not be eligible for imposition of community control sanctions at the sentencing hearing. *Id.* at 7-10 12-15, and 17 (relating to Crim.R. 11(C)(2)(a) and (b)).

**{¶ 46}** Accordingly, challenging the plea on the basis that it was not knowingly, voluntarily, and intelligently made would be wholly frivolous. *E.g., State v. Martin*, 2d Dist. Montgomery No. 29579, 2023-Ohio-1400, ¶ 17; *Hisel*, 2d Dist. Montgomery No. 29322, 2023-Ohio-859, at ¶ 18.

## III. Conclusion

**{¶ 47}** Because no potentially meritorious appellate issues exist, counsel is permitted to withdraw as Six's attorney. The judgment of the Montgomery County Common Pleas Court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.