[Cite as *State v. Evans*, 2023-Ohio-3656.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-10 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 242 |
| | : | |
| JAMES ROBERT EVANS | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on October 6, 2023

. . . . . . . . . . .

CATHY J. WEITHMAN, Attorney for Appellant

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant James Robert Evans appeals from his convictions for aggravated menacing, endangering children, assault on a peace officer, and obstructing official business. For the reasons set forth below, we affirm.

**I.      Facts and Procedural History**

{¶ 2} In November 2022, Champaign County Sheriff's Deputies were dispatched to a home upon a report of a gunshot and a man with a firearm. Upon arrival at the scene, the deputies ran into the residence, where they encountered Evans on top of his spouse. The deputies ordered Evans to release his wife. When he failed to comply, a struggle ensued as the deputies attempted to pull Evans away from his wife. Evans was warned that he would "be tased." Evans got to his knees and yelled, "tase me mother f****r." Evans continued to attempt to hit and kick the deputies. Evans was tased four times before the deputies were able to place him in handcuffs, and even then, Evans continued to struggle and attempted to kick the deputies. During the struggle, two of the deputies were accidentally tased and one deputy sustained physical injuries.

{¶ 3} Two minor children were present during the incident. Evans's 13-year-old child advised the deputies that she had removed a handgun from the home and had placed it on a table outside the home.[1] She informed the deputies that, before the deputies arrived, Evans had been drinking, arguing with his wife, and threatening to kill himself. The child stated that Evans had grabbed a firearm, placed it near his wife, and yelled, "shoot me bitch." According to the child, Evans's wife took the gun and placed it under her arm. Evans then went to his bedroom and retrieved a shotgun. He cocked the shotgun but realized that it was not loaded. He then retrieved another firearm and stated that he was going to kill his wife and kids and then kill himself. His wife tried to take the firearm away. During the ensuing struggle to obtain the gun, Evans had been shot in the knee.

---

[1] The 13-year-old child was Evans's by a previous marriage. Evans and his wife also had a child together who was 9 years old at the time of this incident.

{¶ 4} Following an investigation, Evans was charged with three misdemeanors: two charges of endangering children and one charge of aggravated menacing. He was also charged with two felonies: one count of assault on a peace officer and one count of obstructing official business. Evans entered guilty pleas to all of the offenses. Following a sentencing hearing, the trial court sentenced Evans to 180 days in jail on each of the misdemeanor offenses, to be served consecutively to one another. The court sentenced Evans to a prison term of 18 months for assault and 12 months for obstructing official business conviction. The felony sentences were ordered to be served consecutively to each other and concurrently to the misdemeanor sentences, for an aggregate sentence of 30 months in prison.

{¶ 5} Evans appeals.

## II.     Imposition of Prison Sentences

{¶ 6} Evans's first assignment of error states:

THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION IN SENTENCING THE DEFENDANT-APPELLANT TO A TERM OF IMPRISONMENT.

{¶ 7} Evans contends that the trial court erred by sentencing him to a prison term rather than imposing community control sanctions for the two felony offenses. In support, he argues that the trial court did not properly consider the principles and purposes of sentencing as outlined in R.C. 2929.11 or the seriousness and recidivism factors delineated by R.C. 2929.12. He also notes that the State recommended the

imposition of community control sanctions. Finally, he claims that the trial court noted that he had complied with the conditions of his probation and that he had no prior felony record.[2]

{¶ 8} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law. *Id.* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 9} In *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, the Supreme Court held that nothing in R.C. 2953.08(G)(2)(a) allows "an appellate court to modify or vacate a sentence if it concludes that the record does not support the sentence under R.C. 2929.11 and 2929.12[.]" *Id.* at ¶ 31. The court reached this conclusion because R.C. 2953.08(G)(2)(a) only authorizes an appellate court to vacate or modify a sentence if it clearly and convincing finds that the record does not support certain findings under specifically listed statutes, and "R.C. 2929.11 and R.C. 2929.12 are not among the statutes listed in the provision." *Id.* Thus, R.C. 2953.08(G)(2) does not authorize an appellate court to review whether the record supports a sentence under R.C. 2929.11 or

---

[2] The record does not demonstrate that the court made the findings cited by Evans regarding his bond conditions or his felony history. Instead, the statements referenced by Evans were made by the prosecutor. Further, the record clearly demonstrates that Evans did have a felony record, as noted by the trial court.

R.C. 2929.12. *Id.* at ¶ 30. As a result, an appellate court does not independently weigh the evidence in the record to substitute its judgment for that of the trial court. *Id.* at ¶ 42.

{¶ 10} Thus, we are left to consider whether the imposition of sentences for the felony offenses was contrary to law. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors listed in R.C. 2929.12, properly applies post-release control, and sentences the offender within the permissible statutory range. *State v. Durham*, 12th Dist. Warren No. CA2013-03-023 2013-Ohio-4764, ¶ 42.

{¶ 11} Here, the record reveals that the trial court expressly indicated it had considered the criteria in R.C. 2929.11 and R.C. 2929.12. The court also discussed the reasons why it decided to impose prison terms for the offenses rather than community control sanctions. Furthermore, the sentences for each offense were within the statutory range set forth in R.C. 2929.14(A)(4) and (5). Based upon this record, neither of Evans's felony prison sentences was contrary to law.

{¶ 12} Accordingly, the first assignments of error is overruled.

### III. Consecutive Sentences

{¶ 13} Evans's second assignment of error states:

THE TRIAL COURT ERRED AND ABUSED IT'S [SIC] DISCRETION BY IMPOSING CONSECUTIVE SENTENCES UPON DEFENDANT-APPELLANT.

{¶ 14} Evans argues the trial court erred by ordering the sentences for his felony convictions to be served consecutively.

{¶ 15} When multiple prison terms are imposed, Ohio law presumes those sentences will run concurrently rather than consecutively. R.C. 2929.41(A); *State v. Gwynne*, Ohio Slip Opinion No. 2022-Ohio-4607, __ N.E.3d __, ¶ 10. However, R.C. 2929.14(C)(4) permits the imposition of consecutive sentences if the trial court makes the mandatory sentencing findings prescribed by the statute. *Gwynne* at ¶ 10-11. Specifically, the trial court must find that: (1) "the consecutive service is necessary to protect the public from future crime or to punish the offender"; (2) "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public"; and (3) one or more of the following three findings is made:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive

sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶ 16} "The first step in consecutive-sentence review is to ensure that the consecutive-sentence findings under R.C. 2929.14(C)(4) have been made – i.e., the first and second findings regarding necessity and proportionality, as well as the third required finding under R.C. 2929.14(C)(4)(a), (b), or (c)." *Gwynne* at ¶ 25. If so, we then must determine "whether the record clearly and convincingly supports those findings." *Id.* at ¶ 26.

{¶ 17} "An appellate court's review of the record and findings is de novo with the ultimate inquiry being whether it clearly and convincingly finds—in other words, has a firm conviction or belief—that the evidence in the record does not support the consecutive-sentence findings that the trial court made." *Id.* at ¶ 27. Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 18} "When reviewing the record under the clear-and-convincing standard, the first core requirement is that there be some evidentiary support in the record for the consecutive-sentence findings that the trial court made." *Gwynne* at ¶ 28. We must "focus on both the quantity and quality of the evidence in the record that either supports or contradicts the consecutive-sentence findings." *Id.* at ¶ 29. An appellate court is "authorized to substitute its judgment for the trial court's judgment if the appellate court

has a firm conviction or belief, after reviewing the entire record, that the evidence does not support the specific findings made by the trial court to impose consecutive sentences, which includes the number of consecutive terms and the aggregate sentence that results." *Id.*

{¶ 19} The record demonstrates that the trial court made the findings required by R.C. 2929.14(C)(4) regarding the necessity and proportionality of consecutive sentences. It then determined that R.C. 2929.14(C)(4)(b) and (c) both applied to Evans, even though the existence of either was sufficient to impose consecutive sentences.

{¶ 20} The record supports the trial court's finding under R.C. 2929.14(C)(4)(b). This court has recognized that a course of conduct exists where two offenses share "some connection" or "common scheme." *State v. Ingram*, 2d Dist. Clark Nos. 2022-CA-75, 2022-CA-76, 2023-Ohio-1998, ¶ 23. A course of conduct may involve related acts linked by time, location, similar motivation, or other factors. *Id.* Here Evans's offenses had some connection, as they were linked by time, location, and arguably a similar motivation. Further, the trial court reasonably could have concluded that the harm caused by the assault and obstructing official business, which involved punching, kicking, and the accidental tasing of the deputies, was so great or unusual that no single prison term would suffice.

{¶ 21} Additionally, the presentence investigation report supported the trial court's finding that Evans's criminal history warranted consecutive sentences. Evans had been convicted of two counts of felony vandalism in 1995. In 1997, he had been convicted of disorderly conduct and obstructing official business. He had been convicted of four

separate counts of driving under a suspended license and a count of disorderly conduct in 2002 and 2003. In February 2005, Evans was convicted of passing a bad check, and he was convicted of having drug paraphernalia in December 2005. In 2007, he was convicted of operating a vehicle while intoxicated and failure to control. In March 2008, Evans was convicted of driving under a suspended license, and in July of that same year, he was convicted of resisting arrest and persistent disorderly conduct.

**{¶ 22}** We conclude that the trial court made the findings necessary for the imposition of consecutive sentences, and the record does not clearly and convincingly fail to support those findings. Thus, we conclude that the trial court did not err in imposing consecutive sentences for assault and obstructing official business. Accordingly, the second assignment of error is overruled.

## IV. Conclusion

**{¶ 23}** Both of Evans's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

LEWIS, J. and HUFFMAN, J., concur.