[Cite as *State v. Ray*, 2023-Ohio-4157.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2023-CA-4 |
| | : | |
| v. | : | Trial Court Case No. 2020-CR-0352 |
| | : | |
| DOUGLAS RAY | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 17, 2023

. . . . . . . . . . .

BLAKE P. SOMERS, Attorney for Appellant

MEGAN A. HAMMOND, Attorney for Appellee

. . . . . . . . . . . .

WELBAUM, P.J.

{¶ 1} Appellant, Douglas Ray, appeals from a judgment of the Greene County Court of Common Pleas, which revoked his community control sanctions and sentenced him to 30 months in prison for three counts of illegal use of a minor or impaired person in nudity-oriented material or performance. For the reasons outlined below, the judgment of the trial court will be affirmed as to the revocation of Ray's community control sanctions.

However, the 30-month prison sentence imposed by the trial court will be reversed, and the matter will be remanded to the trial court for resentencing.

**Facts and Course of Proceedings**

{¶ 2} On December 10, 2020, 37-year-old Ray pled guilty to three fifth-degree-felony counts of illegal use of a minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3).   After Ray entered his guilty pleas, the trial court sentenced him to a five-year term of community control sanctions.   As part of the community control sanctions, the trial court ordered Ray to abide by several conditions, including but not limited to the following:

Condition 1:      That Ray "will not own control, purchase, or possess any * * * dangerous ordinance [sic] or weapons, including * * * edged weapons[.]"

Condition 5:      That Ray "will continue to reside at [his] present address only changing this address with the prior approval of [his] Probation Officer."

Condition 14:     That Ray "will answer truthfully all inquiries by [his] supervising probation officer and follow all orders verbal or written given to [him] by [his] supervising probation officer or other authorized representatives of the Court or the Adult Probation Department."

Condition 27:     That Ray "will not own, maintain, or operate computer

equipment, cell phones, personal data assistants, or any other electronic devices capable of connecting to or storing data, communications, or images from the internet without a declared purpose and the written authorization of [his] Probation Officer."

Condition 36: That Ray "will not purchase nor possess children's clothing, toys, videos, or games without the knowledge and permission of [his] Probation Officer."

Judgment Entry (Community Control - Basic Supervision), p. 1-5.

{¶ 3} At Ray's sentencing hearing and in the corresponding judgment entry, the trial court advised Ray that violating his community control sanctions could result in the court's imposition of a longer period of supervision, a more restrictive community control sanction, or a 36-month prison term, i.e., 12 months in prison for each count run consecutively.

{¶ 4} On October 4, 2022, approximately a year and a half after Ray was sentenced, Ray's probation officer filed a motion/affidavit with the trial court alleging that Ray had violated Conditions 1, 14, 27, and 36 of his community control sanctions. On October 5, 2022, Ray's probation officer filed a second motion/affidavit alleging that Ray had also violated Condition 5.

{¶ 5} With respect to Condition 1, the probation officer alleged that on September 28, 2022, she had found three pocketknives in the driver's-side door handle of Ray's vehicle. With respect to Condition 5, the probation officer alleged that on October 4,

2022, she had learned that Ray moved to a new residence without her approval. With respect to Condition 14, Ray's probation officer alleged that on September 28, 2022, Ray had lied to her about: (1) his mother dropping him off at his probation appointment that day; (2) having a cell phone; and (3) the age of the female companion who rode with him to his September 28 probation appointment. With respect to Condition 27, the probation officer alleged that on September 28, 2022, she had found a cell phone, cell phone mount, and cell phone chargers inside Ray's vehicle. With respect to Condition 36, Ray's probation officer alleged that on the same day, she had also found two children's videos and Minecraft[1] UNO cards inside Ray's vehicle.

{¶ 6} In response to the foregoing allegations, the trial court issued a capias for Ray's arrest. Ray was thereafter arrested on October 6, 2022. Following his arrest, Ray waived his right to a probable cause hearing on the revocation proceedings and the matter proceeded to a final evidentiary hearing. At the final hearing, the State presented testimony from John Bogard, Gabrielle Deal, and Ray's probation officer, Latonia Bright. The following is a summary of the testimony that was presented at the hearing.

*John Bogard*

{¶ 7} Bogard testified to owning multiple residential properties in Clark County, Ohio, including a residence located on Erter Drive in the city of Springfield. Bogard

---

[1] Minecraft is a popular video game in which players place and break apart three dimensional blocks that represent different materials (wood, dirt, water, and stone). The purpose of the game is to build, explore, and survive (if the survival mode is chosen). *See Schlinsog, Endermen, Creepers, & Copyright: The Bogeymen of User-Generated Content in Minecraft*, 16 Tul. J. Tech. & Intell. Prop. 185, 187-188 (2013).

testified that he had leased the Erter Drive residence to Ray and Gabrielle Deal in July 2022. Although Bogard did not recognize Ray at the evidentiary hearing, he testified that he had spoken to Ray during an open house at the Erter Drive residence. Bogard testified that Ray and Deal had filled out an application to lease the Erter Drive residence, and that he thereafter performed a background check on Ray by calling Ray's employer. After conducting a background check on Ray, Bogard entered into a written lease agreement with Ray and Deal for the Erter Drive residence.

{¶ 8} At the evidentiary hearing, Bogard identified the written lease agreement at issue. On cross-examination, Bogard acknowledged that Deal and Ray's signatures on the lease agreement appeared to have been written in similar handwriting. Bogard also testified that he had not witnessed Ray and Deal sign the lease agreement. In addition, Bogard testified that Deal had always paid the monthly rent and that he had never received a payment from Ray. Bogard also testified that, after July 2022, there had been no sign of a male tenant living at the Erter Drive residence.

*Gabrielle Deal*

{¶ 9} Deal, who was 18 years old at the time of the evidentiary hearing, testified that she had met Ray in March 2022 at Clark Lake in Springfield, Ohio. Deal testified that she had continued to visit Ray after their initial meeting, but denied ever being in a romantic relationship with him. According to Deal, her relationship with Ray was merely a friendship.

{¶ 10} Concerning the Erter Drive lease agreement, Deal testified that she had

signed Ray's name on the lease agreement without Ray's permission. Deal testified that she did this because she needed a co-signer and because she did not know anyone else in Springfield. Deal also testified that Ray had never spent the night at the Erter Drive residence with her and that Ray lived at a residence on Eastham Street in Springfield. Deal further testified that she was aware that Ray had been designated a sex offender.

{¶ 11} Continuing, Deal testified that on September 28, 2022, she had ridden with Ray in Ray's vehicle to an appointment with his probation officer in Xenia, Ohio. In doing so, Deal testified that Ray had picked her up at her residence on Erter Drive and then driven her to his appointment. Deal claimed that her purpose in accompanying Ray was to be able to provide Ray with access to her cell phone in case of an emergency. Deal testified that she had stayed in the passenger seat of Ray's vehicle during the appointment until Ray's probation officer and a police officer approached her and knocked on the window.

{¶ 12} Deal testified that the officers searched Ray's vehicle and confiscated two cell phones found therein. According to Deal, the officers took a cell phone that she was holding in her hand and a cell phone that had fallen in between the vehicle's middle console and driver's seat. Deal testified that both of the cell phones belonged to her and that she had refused to give the officers the password to either phone.

{¶ 13} Deal also testified that the officers searched her purse and found a knife, which she claimed she used for protection. In addition, Deal testified that the officers found some multi-tools in Ray's vehicle that belonged to her as well. Deal testified that she used the multi-tools for protection and for "moving storage stuff into [her] house."

Hearing Tr. (Nov. 30, 2022), p. 34.

*Latonia Bright*

{¶ 14} Bright testified that she was the probation officer assigned to supervise Ray and that she had been supervising Ray for nine months. Bright testified that as part of Ray's community control sanctions, Ray was required to maintain his Springfield residence on Eastham Street where he lived with his mother. Bright testified that she had never been to the residence on Erter Drive to which Ray had allegedly moved.

{¶ 15} Concerning the events of September 28, 2022, Bright testified that she had asked Ray how he had gotten to his probation appointment that day; Ray responded by telling her that his mother had dropped him off. Bright also testified that she asked Ray whether he had a cell phone, and Ray told her that he did not have one. Bright testified that she was suspicious of Ray and therefore asked him if she could search his vehicle. Bright testified that Ray responded to her request by walking her to his vehicle, which she thereafter searched. Bright testified that her search yielded various items, including multiple cell phones. Specifically, Bright testified to finding all the following items in Ray's vehicle:

> Three pocket knives, condoms, multiple cell phones, a cell phone mount attached to the vent on the driver's side, Puss in Boots DVD, Superman DVD, Minecraft cards, a maroon notebook with names and phone numbers and email addresses[ ] along with passwords, a library card, fishing equipment, air mattress, a book bag full of male clothes, and Bath

and Body Works lotion.

Hearing Tr. p. 42.

{¶ 16} On cross-examination, Bright clarified that she had found two separate cell phones in Ray's vehicle—one that was in Deal's possession and one that was underneath the driver's seat of the vehicle. Bright testified that both of the cell phones were smartphones with large screens. In addition to finding the cell phones, Bright testified to finding a cell phone charger that was plugged into the vehicle's armrest, and a cell phone mount that was located on the driver's-side vent.

{¶ 17} Bright testified that, during the search of Ray's vehicle, Deal had never indicated that the cell phone found underneath the driver's seat belonged to her (Deal). Bright also testified that Ray had denied knowing the password to the cell phone found underneath the driver's seat and that Deal had refused to provide a password. Bright further testified that when she had asked Ray how old Deal was, Ray told her that Deal was 19 years old.

{¶ 18} While discussing the Minecraft cards found in Ray's vehicle, Ray's trial counsel asked Bright if she knew what Minecraft was. In response, Bright testified that she knew Minecraft was a game, but did not know any details about the game or whether it was for children. Bright did, however, testify that both DVDs found in the vehicle, i.e. Puss in Boots and Superman, were children's videos. Bright specifically testified that the Superman DVD was a cartoon, but she also recognized that Superman items are often collected by adults. In addition, Bright testified that the three pocketknives found in Ray's vehicle were not discovered in Deal's purse, but were located in the driver's-side door

and armrest of the vehicle.   Bright also testified that she had not checked the vehicle's registration to determine if Ray owned the vehicle in which the aforementioned items were found.

*Revocation Decision*

**{¶ 19}** After considering the foregoing testimony, the trial court found that there was substantial evidence establishing that Ray had violated the conditions of his community control.   Specifically, the trial court found that Ray had violated Condition 14 by lying to his probation officer about: (1) how he had arrived at his September 28th probation appointment; (2) having a cell phone; and (3) Deal's age.   The trial court also found that Ray had violated Condition 27 due to the cell phone found underneath the driver's seat of his vehicle.   In addition, the trial court found that Ray had violated Condition 36 due to the Puss in Boots DVD and the Minecraft UNO cards found in his vehicle.   The trial court specifically noted that the violation of Condition 36 was not based on the Superman DVD, which the trial court found to be a collectible item.   As a result of these violations, the trial court revoked Ray's community control sanctions and resentenced Ray for his three fifth-degree-felony counts of illegal use of a minor or impaired person in nudity-oriented material or performance.

*Resentencing*

**{¶ 20}** During Ray's resentencing, the trial court reviewed R.C. 2929.15(B)(1)(c)(i), which provides that a prison term for any technical violation of a community control

sanction imposed for a fifth-degree felony "shall not exceed 90 days." Following its review of that statutory provision, the trial court determined that the 90-day limitation did not apply to Ray because his community control violations were not technical in nature. The trial court also found that it had discretion to impose a prison term since "Ray previously ha[d] been convicted of or pled guilty to a felony sex offense under Chapter 2907 of the Revised Code[.]" Sentencing Hearing (Dec. 15, 2022), p. 10.

{¶ 21} After making those findings, the trial court sentenced Ray to an aggregate term of 30 months in prison for his three counts of illegal use of a minor or impaired person in nudity-oriented material or performance. In doing so, the trial court imposed a 12-month prison term for the first count, a 12-month prison term for the second count, a 6-month prison term for the third count, and ordered all the terms to be served consecutively.

{¶ 22} Ray now appeals from the trial court's judgment revoking his community control sanctions and the resulting 30-month prison sentence. In support of his appeal, Ray has raised three assignments of error for this court to review.

**First Assignment of Error**

{¶ 23} Under his first assignment of error, Ray contends that the trial court erred by revoking his community control sanctions. Specifically, Ray claims that the testimony presented at the final evidentiary hearing failed to establish that he had violated the conditions of his community control. We disagree.

{¶ 24} "The right to continue on community control depends upon compliance with

the conditions of community control and is a matter within the sound discretion of the trial court." (Citation omitted.) *State v. Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392, ¶ 13. "Accordingly, we review the trial court's revocation of community control for an abuse of discretion." (Citation omitted.) *Id.* "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. "An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process." *State v. Pate*, 2021-Ohio-1838, 173 N.E.3d 567, ¶ 36 (2d Dist.), citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 25} "Because a community control violation hearing is not a criminal trial, the State need not prove a violation beyond a reasonable doubt." *State v. Reed*, 2d Dist. Montgomery No. 29523, 2023-Ohio-1161, ¶ 11, citing *State v. Cofer*, 2d Dist. Montgomery No. 22798, 2009-Ohio-890, ¶ 12. (Other citation omitted.) " 'The State need only present substantial evidence of a violation of the terms of a defendant's community control.' " *Id.*, quoting *Cofer* at ¶ 12. "Substantial evidence is considered to consist of more than a mere scintilla of evidence, but somewhat less than a preponderance." (Citations omitted.) *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 18 (6th Dist.). *Accord State v. Fountain*, 2023-Ohio-3111, __ N.E.3d __, ¶ 15 (3d Dist.); *State v. Backus*, 5th Dist. Fairfield No. 2022 CA 0041, 2023-Ohio-3222, ¶ 33.

{¶ 26} When making its substantial-evidence determination the trial court must consider the credibility of the witnesses. *State v. Shamblin*, 3d Dist. Logan No. 8-21-03,

2021-Ohio-3784, ¶ 10, citing *State v. Miller*, 10th Dist. Franklin No. 03AP-1004, 2004-Ohio-1007, ¶ 10.   "Similar to a bench trial, when reaching its decision following an evidentiary hearing, the trial court, as the finder of fact, [is] free to believe all, part, or none of the testimony of each witness and to draw reasonable inferences from the evidence presented."   *State v. McGail*, 2021-Ohio-231, 167 N.E.3d 70, ¶ 92 (2d Dist.), citing *State v. Baker*, 2d Dist. Montgomery No. 25828, 2014-Ohio-3163, ¶ 28.

{¶ 27} In this case, the testimony presented at the evidentiary hearing established that Ray drove to his September 28, 2022 probation appointment in a vehicle that contained multiple items that Ray was prohibited from possessing.   Deal, who admittedly rode with Ray to the probation appointment, testified that the vehicle they were riding in was Ray's.   *See* Hearing Tr. p. 35.   In addition, Bright testified that Ray led her to the vehicle in question when she asked if she could search his vehicle.   *Id.* at 40.   Based on this testimony, it was reasonable for the trial court to conclude that the vehicle containing the prohibited items belonged to Ray.

{¶ 28} We also find that it was reasonable for the trial court to conclude that the prohibited items inside the vehicle, i.e. the cell phone underneath the driver's seat, the Puss in Boots DVD, and the Minecraft cards, all belonged to Ray, because the testimony established that Ray and Deal were the only individuals in Ray's vehicle when the vehicle was searched.   Moreover, Deal never testified to owning the Puss in Boots DVD or the Minecraft cards.

{¶ 29} To the extent that Ray argues the Minecraft cards are not a child's game, we note that Bright reported in the October 4, 2022 motion/affidavit that the cards in

question were Minecraft *UNO cards.* The fact that Bright testified that she did not know whether Minecraft is considered a child's game is immaterial since the item at issue was not the actual Minecraft game, but Minecraft UNO cards. Because UNO is a simple card game often played by children, it was reasonable for the trial court to conclude that the Minecraft UNO cards constituted a child's game. Regardless, the evidence also established that Ray was in possession of a Puss in Boots DVD, which is an animated film for children. Accordingly, we conclude that there was substantial evidence establishing that Ray had violated Condition 36 of his community control sanctions, which prohibited him from possessing children's toys and videos.

{¶ 30} Although Deal testified to owning the cell phone that was found underneath the driver's seat of Ray's vehicle, Bright's testimony indicated that on the day of the search, Deal never claimed ownership of that cell phone. Also, the fact that the cell phone was located in an area of the vehicle where Ray, the driver, had been sitting, suggested that the phone belonged to Ray. It was also significant that Bright reported in the October 4, 2022 motion/affidavit that Ray's wallet was found underneath the driver's seat along with the cell phone. Bright also testified to finding a cell phone mount on the driver's-side vent of Ray's vehicle, which suggests that Ray had used the cell phone while driving. In addition, both Deal and Bright's testimony established that Deal was holding a different cell phone when the officers searched Ray's vehicle. Based on this information, it was reasonable for the trial court to find that the cell phone underneath the driver's seat belonged to Ray and not Deal. In other words, there was substantial evidence establishing that Ray had violated Condition 27 of his community control

sanctions, which prohibited him from possessing a cell phone.

**{¶ 31}** In addition to possessing the aforementioned prohibited items, the testimony presented at the hearing established that Ray had lied to Bright about how he arrived at his probation appointment on September 28, 2022, and about his possession of a cell phone. Although the trial court also found that Ray had lied to Bright about Deal's age, we find that there is nothing in the record indicating that Ray knew Deal was 18 years old as opposed to 19 years old on the day in question. Therefore, it was only reasonable for the trial court to conclude that Ray had lied to Bright about how he arrived at his probation appointment and about his possession of a cell phone. In light of these findings, we conclude that there was substantial evidence establishing that Ray had violated Condition 14 of his community control sanctions, which required him to truthfully answer all inquiries by his probation officer.

**{¶ 32}** Because there was substantial evidence demonstrating that Ray had violated Conditions 14, 27, and 36 of his community control sanctions, we find no abuse of discretion in the trial court's judgment revoking Ray's community control on those grounds. Accordingly, Ray's first assignment of error is overruled.

### Second Assignment of Error

**{¶ 33}** Under his second assignment of error, Ray challenges the 30-month prison sentence imposed by the trial court following its revocation of his community control sanctions. Specifically, Ray claims that his prison sentence is contrary to law because his community control violation was a technical violation that was limited to a 90-day

prison sentence per the terms of R.C. 2929.15(B)(1)(c)(i). Ray also claims that his sentence is contrary to law because the trial court relied on inaccurate information regarding his criminal history, i.e., that he had a prior conviction for a felony sex offense. Ray further claims that the trial court's findings related to its imposition of consecutive sentences were clearly and convincingly unsupported by the record.

*Standard of Review*

{¶ 34} Appellate review of felony sentences is governed by R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 7. "Under that statute, an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it clearly and convincingly finds either: (1) the record does not support the sentencing court's findings under certain statutes (including R.C. 2929.14(C)(4), which concerns the imposition of consecutive sentences); or (2) the sentence is otherwise contrary to law." *State v. Evans*, 2d Dist. Champaign No. 2023-CA-10, 2023-Ohio-3656, ¶ 8, citing *Marcum* at ¶ 9, citing R.C. 2953.08(G)(2).

{¶ 35} The Supreme Court of Ohio has recognized that "otherwise contrary to law" means " ' "in violation of statute or legal regulations at a given time." ' " *State v. Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, ¶ 22, quoting *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 34, quoting *Black's Law Dictionary* 328 (6th Ed.1990). For example, " '[a] sentence is contrary to law when it does not fall within the statutory range for the offense or if the trial court fails to consider the purposes

and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors set forth in R.C. 2929.12.' " *State v. Dorsey*, 2d Dist. Montgomery No. 28747, 2021-Ohio-76, ¶ 18, quoting *State v. Brown*, 2017-Ohio-8416, 99 N.E.3d 1135, ¶ 74 (2d Dist.). A sentence is also contrary to law "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12." *Bryant* at ¶ 22.

*90-Day Sentence Limitation for Technical Violations of Community Control*

{¶ 36} As previously discussed, Ray argues that his 30-month prison sentence is contrary to law because the trial court failed to apply the 90-day sentence limitation set forth in R.C. 2929.15(B)(1)(c)(i) for technical violations of community control. Ray claims that the trial court erroneously concluded that his community control violations were nontechnical violations that did not warrant applying the 90-day sentence limitation. We disagree.

{¶ 37} R.C. 2929.15(B)(1) sets forth the sanctions that may be imposed on an offender who violates the terms of his community control sanctions. As relevant to this case, R.C. 2929.15(B)(1)(c)(i) provides the following:

> (B)(1) * * * [I]f the conditions of a community control sanction imposed for a felony are violated or if the offender violates a law or leaves the state without the permission of the court or the offender's probation officer, the sentencing court may impose on the violator one or more of the following penalties:

* * *

(c) A prison term on the offender pursuant to [R.C. 2929.14] and [R.C. 2929.15(B)(3)], provided that a prison term imposed under this division is subject to the following limitations and rules, as applicable:

*(i) If the prison term is imposed for any technical violation of the conditions of a community control sanction imposed for a felony of the fifth degree, the prison term shall not exceed ninety days * * *.*

(Emphasis added.)   R.C. 2929.15(B)(1)(c)(i).

{¶ 38} In *State v. Nelson*, 162 Ohio St.3d 338, 2020-Ohio-3690, 165 N.E.3d 1110, the Supreme Court of Ohio explained how to determine whether a community control violation is technical or nontechnical in nature, and stated the following:

[T]he determination whether a violation is a "technical violation" under R.C. 2929.15(B)(1)(c) does not turn on whether the conduct at issue is criminal.   * * * [A] violation is "nontechnical" if, considering the totality of the circumstances, the violation concerns a condition of community control that was "specifically tailored to address" matters related to the defendant's misconduct or if it can be deemed a "substantive rehabilitative requirement which addressed a significant factor contributing to" the defendant's misconduct.   [*State v. Davis*, 12th Dist. Warren No. CA2017-11-156, 2018-Ohio-2672, ¶ 17, 18]; *see also* [*Black's Law Dictionary* 1463 (6th Ed.1990)] (defining "technical" as "[i]mmaterial, not affecting substantial rights, without substance").   On the other hand, a violation is "technical" when the

condition violated is akin to "an administrative requirement facilitating community control supervision."  *Davis* at ¶ 18; *see also* [*Ballentine's Legal Dictionary and Thesaurus* 661 (1995)] (defining "technical" as "[i]nvolved in detail or in form rather than in a principle or in substance").  There is no single factor that determines whether a violation is technical or nontechnical.  As indicated above, the statute allows the trial court to engage in a practical assessment of the case before it, i.e., to consider the nature of the community-control condition at issue and the manner in which it was violated, as well as any other relevant circumstances in the case.

*Id.* at ¶ 26.

**{¶ 39}** When the Supreme Court applied the foregoing principles in *Nelson,* it held that a defendant's "violation of [a] no-contact order was not a 'technical violation' of the terms of his community control[.]"  *Id.* at ¶ 33.  The court reached this conclusion because "the no-contact order was 'specifically tailored to address' [the defendant's] substance-abuse issues[,]" and "was not a mere 'administrative requirement facilitating community control supervision[,]' but rather was 'a substantive rehabilitative requirement which addressed a significant factor contributing to' [the defendant's] misconduct."  *Id.*, quoting *Davis* at ¶ 17 and ¶ 18.  This court similarly held that a defendant's "failure to report and failure to complete his drug and alcohol assessment amounted to nontechnical violations, because those conditions were 'specifically tailored to address matters related to the defendant's misconduct.' "  *Eastman*, 2d Dist. Clark No. 2020-CA-5, 2021-Ohio-392 at ¶ 22, quoting *Nelson* at ¶ 26.

{¶ 40} In this case, when sentencing Ray after his community control violations, the trial court stated that "[i]n placing Mr. Ray on Community Control, this Court ordered sanctions aimed at addressing his sexual disorder which led to criminal charges." Sentencing Tr. p. 10-11. As previously discussed, Ray was convicted for three counts of illegal use of a minor or impaired person in nudity-oriented material or performance in violation of R.C. 2907.323(A)(3). The convictions stemmed from law enforcement discovering nude images of minors on Ray's electronic devices.

{¶ 41} Upon review, we find that the conditions of community control that Ray violated, particularly his possessing a cell phone and children's toys and videos, were specifically tailored to address matters related to Ray's misconduct. The conditions Ray violated were not mere administrative requirements facilitating Ray's community control supervision, but were substantive rehabilitative requirements that related to aspects of Ray's sexual disorder. Accordingly, the trial court correctly determined that Ray's community control violations were nontechnical. Because Ray's community control violations were nontechnical, the 90-day sentence limitation set forth in R.C. 2929.15(B)(1)(c)(i) did not apply to Ray. Therefore, Ray's sentence is not clearly and convincingly contrary to law in that respect.

*Erroneous Finding Regarding Prior Conviction for Felony Sex Offense*

{¶ 42} Ray also contends that his 30-month prison sentence is contrary to law because the trial court relied on inaccurate information about his criminal history at sentencing. Specifically, Ray claims that the trial court erroneously found that he had a

prior conviction for a felony sex offense.

{¶ 43} The record of the sentencing hearing and the corresponding judgment entry establish that the trial court did indeed find that Ray had a prior conviction for a felony sex offense under R.C. Chapter 2907.   *See* Sentencing Tr. p. 10; Judgment (Dec. 15, 2022), p. 2.   The State concedes, and Ray's presentence investigation report ("PSI") confirms, that Ray did not have a prior conviction for a felony sex offense at the time he was sentenced.   In fact, the PSI indicated that Ray had no prior convictions of any kind other than for minor traffic violations.   Therefore, the trial court's finding was clearly erroneous.

{¶ 44} It is well established that a trial court is required to consider various sentencing factors set forth in R.C. 2929.12 when imposing a felony sentence, but is not required to state any findings regarding those factors on the record.   *State v. Benedict*, 2d Dist. Greene No. 2020-CA-25, 2021-Ohio-966, ¶ 8.   When making a determination regarding recidivism, R.C. 2929.12(D)(2) specifically requires the trial court to consider whether "the offender has a history of criminal convictions."   Because the trial court found that Ray had a prior conviction for a felony sex offense during the sentencing proceedings, the trial court presumably would have relied on that inaccurate information when considering the criminal history factor under R.C. 2929.12(D)(2).

{¶ 45} Although the Supreme Court of Ohio has made it clear that an "appellate court cannot modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12, * * * appellate courts are permitted to reverse or modify sentencing decisions that are otherwise contrary to law." *State v. Brunson*, 171 Ohio St.3d 384, 2022-Ohio-4299, 218 N.E.3d 765, ¶ 69.   As

previously discussed, "when a trial court imposes a sentence based on factors or considerations that are extraneous to those that are permitted by R.C. 2929.11 and 2929.12, that sentence is contrary to law." *Bryant*, 168 Ohio St.3d 250, 2022-Ohio-1878, 198 N.E.3d 68, at ¶ 22.

{¶ 46} In addition, "there is an established federal due process protection against a trial court's reliance on materially false information at sentencing." *State v. Smith*, 2d Dist. Montgomery Nos. 21463, 22334, 2008-Ohio-6330, ¶ 66, citing *Stewart v. Erwin,* 503 F.3d 488 (6th Cir.2007). *Accord State v. Joseph*, 10th Dist. Franklin Nos. 13AP-752, 13AP-753, 2014-Ohio-2733, ¶ 15. "[R]eviewing courts may vacate sentences as violative of due process when the sentencing judge's comments reveal that the court imposed or enhanced the offender's sentence because of improper considerations such as * * * false or unreliable information[.]" *State v. Arnett*, 88 Ohio St.3d 208, 218, 724 N.E.2d 793 (2000), citing *United States v. Safirstein,* 827 F.2d 1380, 1385 (9th Cir.1987); *Townsend v. Burke*, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948) (due process violated where "prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue"). *Accord State v. Hundley*, 162 Ohio St.3d 509, 2020-Ohio-3775, 166 N.E.3d 1066, ¶ 112.

{¶ 47} In this case, the inaccurate information, i.e., Ray's having a prior conviction for a felony sex offense, was significant given that Ray was being sentenced for three counts of illegal use of a minor or impaired person in nudity-oriented material or performance (a felony sex offense). The inaccurate information was also significant because Ray actually had no prior convictions except for minor traffic violations.

Accordingly, the trial court undoubtedly placed significant weight on the inaccurate information when it sentenced Ray. Because of this, we find that the trial court relied on materially false information at sentencing, which violated Ray's constitutional right to due process and amounted to an impermissible consideration under R.C. 2929.12(D)(2). For these reasons, Ray's sentence is contrary to law.

{¶ 48} Because Ray's sentence is contrary to law, it must be reversed, and the matter must be remanded to the trial court for resentencing using Ray's accurate criminal history. In light of this holding, we need not address whether the trial court's imposition of consecutive sentences under R.C. 2929.14(C)(4) was unsupported by the record, as that issue is premature. At Ray's resentencing, the trial court shall consider Ray's accurate criminal history and other relevant information in the PSI when deciding whether to impose consecutive sentences.

{¶ 49} For the foregoing reasons, Ray's second assignment of error is sustained only as to his argument that his 30-month prison sentence is contrary to law due to the trial court's reliance on inaccurate information about his criminal history at sentencing. The other two arguments raised under Ray's second assignment of error are overruled or premature in light of our other findings.

### Third Assignment of Error

{¶ 50} Under his third assignment of error, Ray contends that he was denied his Sixth Amendment right to effective assistance of counsel due to his trial counsel's failure to object to the trial court's inaccurate finding regarding his criminal history at the

sentencing hearing and due to counsel's failure to present evidence showing his lack of a criminal history. Ray claims that he was prejudiced by these failures because the trial court relied heavily on the inaccurate information when sentencing him. Upon review, we find that Ray's ineffective assistance claim is moot given that we have already determined that his sentence is contrary to law and that the matter will be remanded for resentencing.

{¶ 51} Ray's third assignment of error is overruled as moot.


## Conclusion

{¶ 52} The judgment of the trial court is affirmed insofar as it revoked Ray's community control sanctions. The judgment of the trial court is reversed insofar as it sentenced Ray to 30 months in prison, and the matter is remanded to the trial court for resentencing.

. . . . . . . . . . . . .

EPLEY, J. and HUFFMAN, J., concur.